✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED
10:31 am, Oct 28 2025
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___KMT___ Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **IN THE MATTER OF THE EXTRADITION OF** | * | |
| | * | Misc. No. 1:25-mj-02312-JMC |
| **DOMINIC JASON MOORE** | * | |

* * *

## MEMORANDUM ORDER AND CERTIFICATION OF EXTRADITION

BEFORE THE COURT the United States of America's request that the Court certify to the Secretary of State the extradition of Dominic Jason Moore ("Moore") to the Federal Republic of Germany, pursuant to 18 U.S.C. § 3181 *et seq.* and the countries' relevant extradition treaty. For the reasons set forth below, the undersigned certifies that Moore is extraditable and orders that Moore be committed to the custody of the United States Marshal until the Secretary of State renders a decision on extradition and surrender pursuant to 18 U.S.C. § 3186.

### I. BACKGROUND

In 2023, the Government of the Federal Republic of Germany submitted a formal request to the United States for the extradition of Moore. ECF 15-3. On September 9, 2025, the United States filed a Complaint in support of a warrant for the arrest of Moore in the District of Maryland, the place of Moore's last known residence. *See* ECF 2, at 2. The Complaint asserted a basis in both 18 U.S.C. § 3184 and the 1978 Extradition Treaty between the United States and the Federal Republic of Germany (the "Treaty"). U.S.-F.R.G., June 20, 1978, T.I.A.S. No. 9785, *as amended by* the Supplementary Extradition Treaty with the Federal Republic of Germany, U.S.-F.R.G., Oct. 21, 1986, S. TREATY DOC. NO. 100-6 (1987), *and* the Second Supplementary Treaty to the Treaty Between the

United States of America and the Federal Republic of Germany Concerning Extradition, U.S.-F.R.G., Apr. 18, 2006, S. TREATY DOC. NO. 109-14 (2006); *see also* ECF 1, at ¶ 2; 1, Exhibit 1, at 3-4.  The Complaint alleged that on August 3, 2024, while in Germany, Moore committed second-degree murder, in violation of Section 212 of the German Criminal Code.  ECF 1 at ¶ 3, 5.  The Complaint requested an arrest warrant so that Moore may be brought before the Court in connection with Germany's extradition request.  *Id.*, at 8; 18 U.S.C. § 3184.  The Honorable J. Mark Coulson authorized the arrest warrant.  ECF 2.

Upon Moore's arrest, the Court held an initial appearance on September 26, 2025, at that time appointing counsel to represent him in connection with these proceedings and detaining Moore temporarily pending an extradition hearing.  ECF 7-8, 10.  On October 20, 2025, pursuant to 18 U.S.C. § 3184, the undersigned held the extradition hearing.  ECF 16.

## II.   STANDARD OF REVIEW

The purpose of an extradition hearing is not to function as a full trial, but rather to "inquire into the presence of probable cause to believe that there has been a violation of one or more of the criminal laws of the extraditing country, that the alleged conduct, if committed in the United States, would have been a violation of our criminal law, and that the extradited individual is the one sought by the foreign nation for trial on the charge[.]" *Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976).  If the judge determines that the individual is extraditable, then they must send a "certification of extraditability to the Secretary of State, who has the final executive authority to determine whether to extradite the fugitive." *Zhenli Ye Gon v. Holt*, 774 F.3d 207, 210 (4th Cir. 2014) (citing 18 U.S.C. §§ 3184, 3186).

Thus, in an extradition hearing, the Court examines and addresses only the following: (1) whether the judicial officer is authorized to conduct the extradition proceedings; (2) whether the Court has subject matter and personal jurisdiction over the individual; (3) whether the applicable treaty is in full force and effect; (4) whether the crime for which the individual's surrender is sought is included within the terms of the treaty; and (5) whether there is probable cause to believe that the crime for which relator's surrender is sought was committed and that the individual participated in or committed it. *Matter of Extradition of Cholota*, 736 F. Supp. 3d. 303, 307 (D. Md. 2024); *In Re Extradition of Exoo*, 522 F. Supp. 2d. 766, 775 (S.D.W.Va. 2007).

### III.  ANALYSIS

For the reasons stated at the October 20 hearing and below, the Court certifies Mr. Moore as extraditable in accordance with 18 U.S.C. § 3184.

**A. The Court is authorized to conduct these proceedings.**

Pursuant to 18 U.S.C. § 3184, a magistrate judge may issue "a warrant for the apprehension of a person charged with criminal offenses by a foreign government that is a party to an extradition treaty, so that 'evidence of criminality may be heard and considered.'" *Matter of Extradition of Cholata*, 736 F. Supp. 3d at 308 (quoting 18 U.S.C. § 3184).  In this Court, Local Rule 301.6(v) specifically authorizes the United States Magistrate Judges of the District of Maryland to conduct "international extradition proceeding pursuant to 18 U.S.C. § 3184." Loc. R. 301.6(v) (D. Md. 2025).  It follows that the undersigned is authorized to conduct the extradition hearing.

**B. The Court has Subject Matter and Personal Jurisdiction.**

The Court has subject matter jurisdiction over extradition proceedings. 18 U.S.C. § 3184 ("Whenever there is a treaty or convention for extradition between the United States and any foreign government," an extradition proceeding may be conducted by "any magistrate judge authorized so to do by a court of the United States"); *Matter of Extradition of Cholota*, 736 F. Supp. 3d at 308 ("Section 3184 vests this Court with subject matter jurisdiction over extradition proceedings"); *Zhenli Ye Gon,* 774 F.3d at 210 ("[O]nly judicial officers with jurisdiction over the place where the fugitive is 'found' may conduct these extradition proceedings." (quoting *Pettit v. Walshe*, 194 U.S. 205, 218-19 (1904)). The Court also has personal jurisdiction over a person found and arrested in its jurisdiction. 18 U.S.C. § 3184; *Matter of Extradition of T.C.*, 765 F. Supp. 3d 72, 80 (D. Mass. 2025). Law enforcement officers arrested Moore on September 26, 2025, in Baltimore, Maryland. *See Zhenli Ye Gon*, 774 F.3d at 213 ("Section 3184 . . . apparently requires that a fugitive's extradition hearing be held before a judge with jurisdiction over the place where he was found *as a fugitive*." (emphasis in original)). Therefore, the Court has subject matter jurisdiction over the proceeding and personal jurisdiction over Moore. ECF 15, at 17.

**C. The U.S.-German Treaty in full force and effect.**

Where "a treaty or convention for extradition" is in force "between the United States and any foreign government[,]" Section 3184 provides for extradition. 18 U.S.C. § 3184; *Matter of Extradition of Cholota*, 736 F. Supp. 3d at 308. As an initial matter, various federal courts have examined extradition requests pursuant to this treaty, demonstrating that it has been long recognized as valid basis for extradition certification

pursuant to Section 3184. *See Emami v. U.S. Dist. Ct. for the N. Dist. of Calif.*, 834 F.2d 1444, 1447 (9th Cir. 1987); *Matter of Extradition of Lehming*, 951 F. Supp. 505, 509-10 (D. Del. 1996); *Kaiser v. Rutherford*, 827 F. Supp. 832, 834 (D.D.C. 1993); *In re Extradition of Gohir*, No. 2:14-mj-314, 2015 WL 1266793, at *1 (D. Nev. Mar. 19, 2015).

Furthermore, in determining the validity of an extradition treaty, the Courts "assume a deferential posture," giving the "executive branch's construction of a treaty 'great weight.'" *Ordinola v. Hackman*, 478 F.3d 588, 607 (4th Cir. 2007) (Traxler, J., concurring) (citing *U.S. v. Kin-Hong*, 110 F. 3d 103, 110 (1st Cir. 1997)); *see also Meza* v. *U.S. Atty. Gen.*, 693 F.3d 1350, 1358 (11th Cir. 2012) ("We and every other Court of Appeals to consider whether a treaty has lapsed ha[ve] deferred to the Executive's determination.") (alteration in original) (internal quotation marks and citation omitted); *In re Extradition of Nezirovic*, Civil Action No. 7:12MC39, 2013 WL 5202420, at *4 (W.D. Va. Sept. 16, 2013) (giving "substantial weight to the determination of the government's political departments on whether a treaty is still in effect."). The United States submitted a declaration the Attorney Adviser in the Office of the Legal Adviser for the Department of State in Washington, D.C. ECF 1, Exhibit 1 at 1. She asserts that there is an extradition treaty "in full force and effect between the United States of America and the Federal Republic of Germany." *Id.*, at ¶ 2. Pursuant to the Treaty, signed on June 20, 1978, and amended in 1987, "the Government of the United States represents the interests of German in proceedings in U.S. courts arising out of extradition requests made by Germany," and vice versa. *Id.*, at ¶ 4. Based on the declaration from the Office of the Legal Advisor for the Department of State, the United States has established that the extradition treaty between the United States and the Federal Republic of Germany is in

full force and effect. *See In re Extradition of Gohir*, 2015 WL 1266793, at *3 (affording deference to the State Department's determination and finding the treaty between the United States and Republic of Germany in full force).

### D. The alleged crime falls within the scope of the extradition treaty.

The Court must next determine whether the charged offense is covered by the Extradition Treaty. In other words, the Court must find that the offense Moore allegedly committed in Germany is also a chargeable offense if committed in the United States. Courts often describe this requirement as one of "dual criminality." *See, e.g.*, *Zhenli Ye Gon*, 774 F.3d at 211 (citing *Ordinola*, 478 F.3d at 594 n.7). "The determination of whether criminal offenses are punishable under the laws of the United States requires examination of 'whether the conduct is illegal under United States federal law, the law of the state in which the fugitive was found, or the law of a preponderance of the states.'" *Matter of Extradition of Cholata*, 736 F. Supp. 3d at 309 (quoting *In re Extradition of Etouman*, 533 F. Supp. 3d 312, 317 (E.D. Va. 2021)). In assessing this requirement, the Court examines the substance of the criminalized conduct rather than just the names of the offenses or the respective scope of liability. *Zhenli Ye Gon*, 774 F.3d at 217 (citing *Collins v. Loisel*, 259 U.S. 309, 312 (1922)); *accord United States v. Soto-Barraza*, 947 F.3d 1111, 1117 (9th Cir. 2020) ("The principle of dual criminality does not require that the crimes be identical; rather, only the essential character of the acts criminalized by the laws of each country must be the same, and the laws substantially analogous." (internal quotation marks and citation omitted)). Therefore, the ultimate question here is whether

"the two countries punish the same basic evil; it does not require that the offenses contain identical elements." *Zhenli Ye Gon*, 774 F.3d at 217 (citations omitted).

German authorities charged Moore with second-degree murder pursuant to Section 212 of the German Criminal Code. ECFs 1 at ¶ 3; 15-3, at 2; 15 at 19. As described more fully in the Complaint as well as the original charging documents from Germany, Moore stands accused of strangling his co-worker to death while on site at his construction job in the summer of 2024. ECF 1 at ¶ 5. In the United States, the federal murder and manslaughter statutes punish the killing another person under various circumstances. *See* 18 U.S.C. §§ 1111 *et seq.* Both the asserted German law and United States law "punish acts of the same general character—the taking of another person's life." *Clarey v. Gregg*, 138 F.3d 764, 765-66 (9th Cir. 1998) (finding dual criminality where the alleged conduct violated Mexico's crime of "simple homicide"). Thus, the charged offense involves the "same basic evil" as criminal conduct in the United States and is an extraditable offense under the Treaty.

E. **Probable cause exists to sustain the alleged charges.**

"'[T]he same probable cause standard that applies in federal preliminary hearings [applies here], 'meaning that the magistrate judge's role is merely to determine whether there is competent evidence to justify holding the accused to await trial.'" *Haxhiaj v. Hackman*, 528 F.3d 282, 287 (4th Cir. 2008) (quoting *Ordinola*, 478 F.3d at 608 (Traxler, J., concurring)). This probable cause standard is "identical to the probable cause standard applicable in preliminary hearings in federal criminal proceedings." *In re Extradition of Exoo*, 522 F. Supp. 2d at 777. In the context of an extradition hearing, the Fourth Circuit has explained that the magistrate judge must "look[] for evidence sufficient

to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Atuar v. U.S.*, 156 Fed. App'x 555, 562 (4th Cir. 2005)(internal citation and quotations omitted); *see also Loisel*, 259 U.S. at 316 (in an extradition hearing, the "function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction"); *Kin–Hong*, 110 F.3d at 117 (explaining that the "purpose of the evidentiary portion of the extradition hearing is to determine whether the United States, on behalf of the requesting government, has produced sufficient evidence to hold the person for trial"); *Matter of Extradition of Cholata*, 736 F. Supp. 3d at 308 (quoting *Atuar*, 156 Fed. App'x at 560) (defining probable cause as "'reasonable ground to believe the accused guilty' of the charged crimes").  The Court's focus at this stage "is not punishability but prosecutability." *In re McMullen*, 989 F.2d 603, 611 (2d Cir. 1993) (en banc).

      Here, the complaint submitted by the United States on behalf of the Federal Republic of Germany describes, in detail, the investigation of the murder that led to the charges against Moore.  ECF 1.  It recounts the physical and DNA evidence collected by the German police and summarizes witness testimony as well as Moore's statements.  ECF 1, Exhibit 1 at 63-70; ECF 15, at 19-20.  While the Court is not aware of any authority assigning dispositive weight to any specific consideration, it is worth noting that a panel of judges from Germany issued an opinion outlining its probable cause finding as to Moore.  ECF 1, Exhibit 1, at 79-84.  The evidence before this Court—which includes by way of the Complaint and the underlying documents presented to the Court—provides a reasonable ground upon which to justify holding Moore for trial had the charged offense

been committed in the United States. As defense counsel acknowledged at the extradition hearing, the government's burden at this juncture is not a heavy one. While there may be defenses on the ultimate question of guilt or innocence, the information presented to the Court demonstrates probable cause as to the charge giving rise to the extradition request. Focusing only on prosecutability rather than punishability, the Court finds the government satisfies the statute.

## IV. CONCLUSION

For the foregoing reasons, having found that all the criteria for extradition have been satisfied, it is hereby CERTIFIED that it is appropriate to extradite Dominic Jason Moore to Germany pursuant to 18 U.S.C. § 3184 and the Treaty.

It is further ORDERED that Moore is committed to the custody of the United States Marshall pending the Secretary of State's decision on extradition and surrender pursuant to 18 U.S.C. § 3186.

It is further ORDERED that the Clerk of the Court shall forward a certified copy of this Memorandum Order and Certification, together with a copy of the evidence presented in connection with these proceedings (ECFs 1, 15 (inclusive of all attached exhibits)), to the Secretary of State.

Date: October 27, 2025                         /s/
                                      Charles D. Austin
                                      United States Magistrate Judge